IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| HOUSTON CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TRIDENT CONSTRUCTION SERVICES, LLC,<br><br>Defendant. | C/A No.: 2:22-cv-2037-MBS<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**(Non-jury)** |

Plaintiff Houston Casualty Company ("HCC"), by and through its undersigned counsel, complains of the Defendant Trident Construction Services, LLC ("Trident") and respectfully alleges and states as follows:

## NATURE OF ACTION

1. This is an action for declaratory relief pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. §§ 2201-2202, and Federal Rule of Civil Procedure 57 to determine whether HCC has a duty to indemnify Trident for costs incurred to correct faulty or defective work at a construction project.

## THE PARTIES

2. HCC is an insurance company incorporated and existing under the laws of and has its principal place of business in the state of Texas and writes policies in the state of South Carolina.

3. Trident is a limited liability company organized under the laws of the state of South Carolina and none of its members is a citizen of the state of Texas.

1

**JURISDICTION AND VENUE**

4. Jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

5. Venue is appropriate under 28 U.S.C. § 1391 because the claim at issue arises out of incidents that occurred in this district. Further, this case involves the interpretation of an insurance policy entered into in South Carolina and insures interests in South Carolina. The subject insurance policy was issued to the first named insured, Gadsden Development Company II, LLC ("Gadsden"), in this district, and was issued in connection with The Gadsden, 299 East Bay St., Charleston, SC 29401, (the "Project"), a construction project located within this district.

6. All conditions precedent have occurred, been performed, or have been waived.

**COMMON ALLEGATIONS**

**A.  The Claim**

7. Gadsden hired Trident as the general contractor to construct the Project, which is a condominium development.

8. After construction was completed, the owners of four units at the Project reported moisture intrusion into their units after a significant rainstorm that occurred on March 5, 2020.

9. Based on information that was developed after the unit owners reported the issues, it was discovered that prior weather events also caused moisture intrusion, including Hurricane Dorian on September 4-5, 2019, and a strong storm system that occurred on December 23-24, 2019.

10. An investigation revealed that the building's stucco cladding system was the proximate cause of the damage to the units because it caused water to intrude and run down the walls to the units at issue, which were located on the bottom floor.

11. After the source of the moisture intrusion was identified, work was undertaken to replace portions of the exterior skin of the building at the four corners of the building.

12. Trident submitted invoices to HCC seeking payment for the costs incurred in connection with both the work necessary to correct the faulty workmanship and to repair damage to the units that resulted from the faulty workmanship.

13. Based on HCC's analysis of the information that Trident provided, on October 27, 2021, HCC issued a check in the amount of $91,658.61 to Trident under the Policy to cover the costs of repairing the resulting damage to the units caused by the faulty workmanship.

14. HCC informed Trident that HCC remained willing to consider any additional information that Trident had to support of payment of other sums that Trident believed should also be covered under the Policy.

15. Trident has responded claiming entitlement to sums associated with the repair of the faulty work at the Project.

16. Trident contends that because exclusion I.A.2.l Damage to Your Work ("Exclusion l") was deleted from the subject commercial general liability policy by endorsement, the Policy affords coverage for faulty or defective workmanship.

**B.     The Policy**

17. HCC issued commercial general liability policy no. H16PC30763-00 to Gadsden for the period December 28, 2016 to January 10, 2019 (hereinafter the "Policy"). A true and

correct copy of the Policy is attached as **Exhibit A**, and the terms of the Policy are incorporated as if fully stated here.

18.  The Policy includes an endorsement entitled, Wrap Up Program Change Endorsement with General Aggregate Reinstatement (the "Wrap Up Endorsement"), which provides that Section II – WHO IS AN INSURED of the Policy is amended to include "enrolled contractors." "Enrolled contractors" include the general contractor construction manager and contractors of every tier who have completed the appropriate enrollment documents prior to the commencement of their work at the Project.

19.  Upon information and belief, Trident was an "enrolled contractor" and therefore is an insured under the Policy.

20.  Pursuant to the same Wrap Up Endorsement, Exclusion l was deleted from the Policy.

21.  The application of Exclusion l has no impact on the outcome of a case where, as here, the issue is whether the claims involve "property damage" due to an "occurrence." Where the claims do not involve "property damage," or claims due to an "occurrence," no need exists to determine whether any policy exclusions or exceptions apply.

22.  The Policy's insuring agreement provides that HCC "will pay those sums that the insured becomes legally obligated to pay as damages because of … 'property damage' to which th[e] insurance applies" and caused by an "occurrence."

23.  The Policy defines "property damage" as either "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." The South Carolina Supreme Court has considered the same definition of "property damage" in the context of claims for construction defects. The Court has

explained that there is a "difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage.'" *Crossmann Cmties. v. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589, 593 (S.C. 2011) (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 889-90 (Fla. 2007)).

24.     The Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Section 38-61-70 of the South Carolina Code of Laws provides that "occurrence" means "property damage … resulting from faulty workmanship, exclusive of the faulty workmanship itself."

25.     The amounts for which Trident seeks recovery under the Policy are not sums for which the insured was legally obligated to pay as damages because of "property damage" caused by an "occurrence."

26.     HCC is entitled to a judicial declaration that it owes no duty to afford coverage for the amounts that Trident seeks because those sums did not involve "property damage" caused by an "occurrence."

**FOR A FIRST DECLARATION**
**(Lack of "Property Damage")**

27.     The allegations contained in paragraphs 1 through 26 above are incorporated as if fully stated here.

28.     Under the Policy's insuring agreement, coverage is afforded for damages because of "property damage."

29.     The Policy defines "property damage," in relevant part, as physical injury to tangible property.

30. The amounts Trident seeks from HCC are not for "property damage." They are for the costs of repair or replacement of faulty workmanship (or defective products), the removal of components to get to the damaged portions of the Project, consulting work to determine how the building envelope was faulty and how it should be repaired, and overhead and profit.

31. The repair or replacement of any defective components and/or faulty work is not "property damage."

32. The removal of components to get to the damaged portions of the Project is not "property damage."

33. Consulting work to determine the nature of the faulty building envelope is not "property damage."

34. Overhead and profit is not "property damage."

35. The sums for which Trident seeks recovery from HCC are thus not for damages because of "property damage."

36. Accordingly, no coverage exists under the Policy for the sums Trident seeks to recover from HCC, and HCC is entitled to a declaration from this Court that it has no duty to indemnify Trident for the sums.

## FOR A SECOND DECLARATION
### (Lack of an "Occurrence")

37. The allegations contained in paragraphs 1 through 36 above are incorporated as if fully stated here.

38. Under the Policy's insuring agreement, coverage is afforded for damages because of "property damage" caused by an "occurrence."

39. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

40. Section 38-61-70 of the South Carolina Code of Laws further defines "occurrence" to mean "property damage … resulting from faulty workmanship, exclusive of the faulty workmanship itself."

41. Trident seeks recovery for the costs to repair faulty workmanship at the Project.

42. Faulty workmanship is not an accident.

43. The amounts Trident seeks to recover from HCC were thus not caused by an "occurrence."

44. Accordingly, no coverage exists under the Policy for the sums Trident seeks to recover from HCC, and HCC is entitled to a declaration from this Court that it has no duty to indemnify Trident for the sums.

WHEREFORE, a justiciable controversy exists between the parties to this action arising out of these claims. Therefore, HCC asks this Court to construe and determine the rights of the parties and to declare that:

a. The sums Trident seeks recovery from HCC do not constitute damages because of "property damage" as defined under the Policy;

b. The sums for which Trident seeks recovery from HCC were not caused by an "occurrence" as defined under the Policy and South Carolina law; and

c. HCC has no additional obligations to Trident under the Policy.

HCC prays that it be granted the relief set forth above, the costs of this action, and any such other and further relief as this Court shall deem just and proper.

CLYDE & CO US LLP

By: s/Janice Holmes
Janice Holmes (Fed. I.D. No. 11366)
1775 Pennsylvania Ave. NW, Suite 400
Washington, DC 20006

<div style="margin-left: 50%;">

Telephone: (202) 747-5100  
Facsimile:  (202) 747-5150  
janice.holmes@clydeco.com  

and  

Alfred Warrington (*application for admission pro hac vice is forthcoming*)  
1221 Bricknell Avenue, Suite 1600  
Miami, FL 33131  
Telephone: (305) 446-2646  
Facsimile:  (305) 441-2374  
alfred.warrington@clydeco.com  

Attorneys for Houston Casualty Company

</div>

Dated: June 27, 2022.