**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Houston Casualty Company,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>Trident Construction Services, LLC,<br><br>    Defendant/Counterclaim Plaintiff. | Case No. 2:22-cv-02037-RMG<br><br>**ORDER AND OPINION** |

    Before the Court is Defendant Trident Construction Services' (Trident) motion for partial summary judgment. (Dkt. No. 48). Also before the Court is Plaintiff Houston Casualty Company's (HCC) motion for summary judgment. (Dkt. Nos. 49, 50).

    For the reasons below, the Court grants HCC's motion for summary judgment (Dkt. Nos. 49, 50) and denies Trident's motion for summary judgment (Dkt. No. 48).

    **I.    Background**

    This is a declaratory judgment action regarding the scope of Trident's insurance coverage under an Owner-Controlled Insurance Program ("OCIP"), alternatively known as a "wrap" or "wrap-up" commercial general liability ("CGL") policy, issued by HCC to Gadsden Development Company I, LLC ("GDC") ("the Policy"). (Dkt. No. 48 at 1, 9; Dkt. No. 57 at 1). Trident served as the general contractor overseeing construction of The Gadsden, a condominium building in Charleston, South Carolina. (Dkt. No. 50 at 1). After construction of the project was completed, three weather events resulted in flooding to four condominium units which required remediation of both the water damage and defective stucco that proximately caused the water intrusion. (Dkt. No. 48-2 at 2). When Trident sought reimbursement under the Policy for the repair work completed by subcontractors, HCC paid only the portion of Trident's claim corresponding to the

1

water intrusion damage, and declined to reimburse Trident for the costs of repairing the defective construction. (Dkt. No. 48 at 2; Dkt. No. 50 at 9-10). Per HCC, it "agreed to pay for the damages caused by the defective work, but declined to pay for the costs of correcting the defective work." (Dkt. No. 50 at 2).

Trident contends that the insurance policy, which covers "damages because of" "property damage caused by an occurrence," must be read to also cover the costs of repairing and replacing the defective construction, and seeks partial summary judgment regarding the scope of Policy coverage. (Dkt. No. 48 at 5-8). Trident also counterclaims for damages, alleging breach of contract and bad faith evidenced by HCC's refusal to settle Trident's full claim. (Dkt. No. 16). HCC also seeks summary judgment in its favor, and requests this Court declare that the amounts for which Defendant seeks reimbursement (1) "do not constitute damages because of 'property damage' as defined under the Policy" and (2) "were not caused by an 'occurrence' as defined under the Policy and South Carolina law." (Dkt. No. 1 at 7). HCC also contends that there is no genuine dispute of material fact supporting Trident's contractual counterclaims. (Dkt. No. 50 at 29-33).

The Parties filed responses (Dkt. Nos. 55, 57) and replies (Dkt Nos. 59, 60) to the summary judgment motions, which are now ripe for disposition.

## II.     Legal Standard

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See id.* Therefore, summary judgment should be granted "only when it is clear that

there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).

"In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving part must demonstrate specific, material facts exist that give rise to a genuine issue to survive the motion for summary judgment. *See id.* at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III.  Discussion

#### A.  Declaratory Judgment

"When the purpose of the underlying dispute is to determine whether coverage exists under an insurance policy, the action is one at law." *Crossmann Cmtys of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589, 592 (S.C. 2011).  Under South Carolina law, which governs the Policy, "insurance policies are subject to the general rules of contract construction." *Whitlock v. Stewart Title Guar. Co.*, 732 S.E.2d 626, 628 (S.C. 2012) (internal quotations omitted).  The Court considers each Party's interpretation of the Policy in turn, which reads:

> We will pay those sums that the insured becomes
> legally obligated to pay as damages because of
> "bodily injury" or "property damage" to which
> this insurance applies.
> * * *

> b. This insurance applies to "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the "covered project." [*as amended by Wrap Up Program Change Endorsement*][1]

(Dkt. No. 1-1 at 17, § 1.1). The Policy defines "occurrence" and "property damage" as:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(*Id.* at 30, § V.13)

> 17. "Property damage" means:
>   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
>   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(*Id.* at 31, § V.17)

### B. Summary of Arguments

#### 1. HCC's Motion

As a preliminary matter, HCC disagrees with Trident's contention that "the existence of an occurrence and resulting property damage are not at issue." (*See* Dkt. No. 48 at 11). Indeed, HCC moves for summary judgment on its belief that the damages Trident seeks for the costs of repairing defective construction are not covered by the Policy's definition of property damage, nor qualify as an occurrence. (Dkt. No. 50 at 20-28).

---

[1] The Wrap Up Program Change Endorsement deleted Exclusions j, k and l from the Policy. (Dkt. No. 50 at 4).

4

HCC distinguishes between two separate "occurrences" resulting in distinct damages to the condominium building: (1) the flooding to four condominium units proximately caused by three weather events and the defectively constructed stucco (which HCC accepts as covered under the Policy), and (2) the faulty workmanship which "caused" the need for repairs to the defective construction. (*See* Dkt. No. 57 at 5 ("The property damage caused by the water intrusion was to property that was separate from the faulty workmanship, and HCC paid for those damages.")). HCC contends that this latter "occurrence" is not a covered occurrence under South Carolina law, which defines an occurrence as "(1) an accident, including continuous or repeated exposure to substantially the same general harmful conditions; and (2) property damage or bodily injury resulting from faulty workmanship, ***exclusive of the faulty workmanship itself***"." (*Id.* at 24) (citing S.C. Code § 38-61-70(B) (emphasis added)). HCC also argues that Trident's repair and replacement of defective construction did not constitute "property damage" under established South Carolina law. (Dkt. No. 57 at 3-7). HCC requests the Court find summary judgment in its favor on both points.

### 2. Trident's Motion

Trident argues that the singular "occurrence" for its claimed costs is, collectively, the three weather events that resulted in flooding to the condominium units. (Dkt. No. 48 at 2 n.1). Trident further contends that principles of contract interpretation support interpreting the phrase "damages because of property damage" to include the repair of the defective construction and attendant economic damages, including overhead, profit, and supervision costs. (*Id.* at 6-7; Dkt. No. 55 at 2-3). In Trident's view, the cost of repairing the defective construction is covered by the Policy's plain language, as "[t]he exterior investigation and repair work were prompted by and would not

5

have occurred but for the interior damage" such that the exterior work "constitute[s] covered 'damages because of' 'property damage caused by an occurrence.'" (Dkt. No. 48 at 8).

### C. Analysis

The Court begins its analysis by determining whether Trident has alleged "property damage" covered by the Policy, which provides that HCC "will pay those sums that [Trident] becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies." (Dkt. No. 1-1 at 17, § I.1.a). "The threshold question in determining coverage under a CGL policy is whether the claim at issue is for 'property damage' caused by an 'occurrence' within the general grant of coverage in the CGL insuring agreement." *Harleysville Grp. Ins. v. Heritage Cmtys., Inc.*, 803 S.E.2d 288, 295 (S.C. 2017). "[I]t is only after 'property damage' has been alleged that the question of 'occurrence' is reached." *Crossmann*, 717 S.E.2d at 594.

#### 1. "Property Damage" Caused By "An Occurrence"

The Court determines that Trident's costs of repairing the defective construction are not covered by the Policy because faulty workmanship does not constitute "property damage" under the Policy or South Carolina law. Two South Carolina Supreme Court cases, read together, are instructive to the Court's analysis.

In *Auto Owners Insurance Company v. Newman*, the South Carolina Supreme Court held that a subcontractor's faulty workmanship did not constitute an "occurrence" under a CGL policy. 684 S.E.2d 541, 544 (2009); *accord L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 621 S.E.2d 33, 36 (2005) (reasoning that if faulty workmanship was treated as an "occurrence," "the CGL policy would be more like a performance bond, which guarantees the work, rather than like an insurance policy, which is intended to insure against accidents."). In *Newman*, a contractor sought

coverage under a CGL policy for costs incurred by subcontractors to repair defective construction of a stucco wall. The court reasoned that "although the subcontractor's negligent application of the stucco [did] not on its own constitute an 'occurrence,' . . . the continuous moisture intrusion resulting from the subcontractor's negligence [was] an 'occurrence'" falling within the Policy's coverage. *Id.* at 544. As a result, the contractor was able to recover costs for its repairs to the water intrusion damage which resulted from the subcontractor's negligent application of stucco. *Id.* at 545-46.

The court next determined that the contractor could not recover the costs of replacing the defective stucco due a policy term excluding coverage for damage to the contractor's own defective workmanship.[2] *Id.* at 546-47. The exclusion barred these costs notwithstanding the fact that "replacement of the defective work may be incidental to the repair of property damage covered by the policy." *Id.* at 546. Further, the court explained that the policy's "your work" exclusion, a common CGL exclusion that insures contractors for damages arising from subcontractors' work, did not create coverage for the cost of removing and replacing the defective stucco that was otherwise "unambiguously prohibit[ed]" by the exclusion barring recovery for repairs of "your work."[3] *Id.*

---

[2] Unlike Trident's Policy, the Newman Policy contained a "your work" exclusion, which afforded the contractor coverage for work performed by subcontracts. *Id.* at 546. However, like Trident's Policy, the Newman Policy also contained an exclusion barring recovery for damages "claimed for any loss, cost or expense . . . for the repair, replacement, adjustment, removal or disposal of . . . 'Your product'; . . . 'Your work'; or . . . 'Impaired property'; if such product, work or property is withdrawn . . . from use . . . because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it." *Id.*

[3] The Parties removed the "your work" exclusion from the Policy, but retained an exclusion barring recovery for "'property damage' to 'impaired property' or property that has not been physically injured, arising out of . . . (1) [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'" at exclusion m. (Dkt. No. 1-1 at 51, "Wrap Up

The South Carolina Supreme Court sought to clarify "the applicable legal framework for determining whether coverage is triggered" in *Crossmann Communities of North Carolina, Inc. v. Harleysville Mutual Insurance Company*." 717 S.E.2d 589, 593 (2011).  The court explained that it had "analyzed *Newman* solely through the lens of whether there was an occurrence," but considered that "a more complete understanding of the coverage issue . . . should involve the policy term 'property damage.'" *Id.*  The court highlighted that while "negligent or defective construction resulting in damage to otherwise non-defective components may constitute 'property damage,' . . . the defective construction would not." *Id.* at 594.  In *Newman*, the defectively constructed stucco was not "injured," so "the costs to replace the negligently constructed stucco did not constitute 'property damage' under the terms of the policy." *Id.* The court thus emphasized the "difference between ***a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage***,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage.'" *Id.* at 593 (emphasis added); *see also Travelers Indem. Co. v. Miller Bldg. Corp.*, 221 F. App'x 265, 269 (4th Cir. 2007) ("[P]roperty damage' does not refer to repairs to property necessitated by an insured's failure to properly construct the property to begin with." (quoting *Prod. Sys., Inc. v. Amerisure Ins. Co.*, 605 S.E.2d 663, 666 (2004) (applying North Carolina law))).

Applying this precedent to the present facts, the Court holds that Trident's costs of repairing the defective construction do not constitute "property damage" nor an "occurrence." "The stucco was not 'injured'" as a result of its being defectively constructed, and as such, does not constitute "property damage" under the Policy. *See Crossmann*, 717 S.E.2d at 594. Nor does

---

Program Change Endorsement with General Aggregate Reimbursement" § 3; *see also id.* at 21, § 1.2.m.).

the defective construction itself constitute an "occurrence" – rather, the relevant occurrence here is the water intrusion resulting from the weather events and defective construction. *See Newman*, 684 S.E.2d at 544-45; *see also Penn Nat. Sec. Ins. Co. v. Design-Build Corp.*, No. 2:11-CV-02043-PMD, 2012 WL 2712555, at *5 (D.S.C. July 9, 2012) (holding that building repairs constituted "damage to the work product itself, allegedly caused by faulty workmanship" and "[s]uch damages do not constitute an occurrence under a CGL policy."). Because there has not been any property damage caused by an occurrence, the Policy does not provide coverage and "the court does not need to address whether the various exclusions and endorsements also operate to prohibit coverage." *Builders Mut. Ins. Co. v. R Design Const. Co.*, LLC, C.A. No. 2:07-1890-JFA, 2010 WL 2079741, at *7 (D.S.C. May 24, 2010).

### 2. "Damages Because Of"

The Court next considers whether the preceding phrase "damages because of" should be read to expand the Policy's coverage beyond property damage to Trident's consequential and economic damages. In Trident's view, the repair costs necessitated by the subcontractors' faulty workmanship reflect "damages because of" "property damage caused by an occurrence" because "[a]s a result of the water intrusion and resultant damage, Trident expended time and resources to repair the damage and ensure it would not recur." (Dkt. No. 55 at 3). Trident claims overhead, profit, and supervision costs as damages, arguing "[b]ut for the water intrusion and resulting damage, Trident would have deployed its supervisory personnel to other jobs." (*Id.*).

#### a. Economic Costs

It is well-established under South Carolina law that "[a] general liability policy is intended to provide coverage for tort liability for physical damage to the property of others; it is not intended to provide coverage for the insured's contractual liability which causes economic losses." *Isle of*

9

*Palms Pest Control Co. v. Monticello Insurance Company*, 459 S.E.2d 318, 320 (S.C. Ct. App. 1994). *See also, e.g.*, *Bennett & Bennett Const., Inc. v. Auto Owners Ins. Co.*, 747 S.E.2d 426, 430 (S.C. 2013) ("As we have repeatedly explained, a CGL policy does not insure the insured's work itself but consequential risks that stem from the insured's work . . . . CGL coverage is for tort liability for injury to persons and damage to other property and not for contractual liability of the insured for economic loss because the completed work is not that for which the damaged person bargained.") (internal quotations omitted); *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 621 S.E.2d 33, 35 (S.C. 2005) ("[A] CGL policy is not intended to cover economic loss resulting from faulty workmanship[.]") (citing *Century Indem. Co. v. Golden Hills Builders, Inc.*, 561 S.E.2d 355, 357 (2002) (*overruled on other grounds by Crossmann*, 717 S.E.2d at 591)). In *Newman*, the South Carolina Supreme Court cited the policy exclusion barring damages arising from repair to the contractor's own defective work "as one of the bases for this Court's acknowledgement that a claim solely for economic losses resulting from faulty workmanship is part of an insured's contractual liability which a CGL policy is not intended to cover." *Newman*, 684 S.E.2d at 546.

While the relevant policy exclusion in *Newman* differs in substance from this Policy, the Court finds that the same reasoning counsels against Trident's argument for economic damages here. Exclusion m of the Policy bars recovery for property damage arising out of a contractor's own defective, deficient, inadequate or dangerous work product. (Dkt. No. 1 at 21, § 1.2.m.). While the repairs and replacement of defective work is not an enumerated cause for such potential damage (as in the *Newman* policy exclusion), the Court considers that such work would fall within the Policy's definition of "property damage" and be barred by the exclusion's plain terms.

In light of the line of South Carolina cases recognizing that the purpose of CGL policies is to protect an insured from tort, not contractual, liability, this Court denies Trident's claim for economic damages incurred in repairing and replacing its own faulty workmanship.

### b.  "Get-To" or "Tear-Out" Costs

The Court is similarly not persuaded by Trident's argument that "it is difficult to conceive of a category of cost that better constitutes 'damages because of property damage' than the costs to remove building components in order to repair the resulting damage behind those components," otherwise known as "get-to" or "tear-out" damages.  (Dkt. No. 55 at 6-7).  Because faulty workmanship does not constitute "property damage" nor an "occurrence" under the Policy or South Carolina law, the Court rejects a construction of the Policy language that would afford Trident recovery for "damages because of" "[the defective construction]."  To the extent Trident seeks to frame its argument as seeking recovery for additional "damages because of" "[the water intrusion]," this claim fails under the Policy's "impaired property" exclusion (exclusion m), which excludes from coverage:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> > (1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
> >
> > (2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

(Dkt. No. 1 at 21, § 1.2.m.)

Impaired property is defined at exclusion m as:

11

> tangible property, other than "your product" or "your work," that cannot be used or is less useful because:
>
>> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>>
>> b. You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

(*Id.* at 29, ¶ V.8).

Trident counters that "any work performed by or on behalf of Trident (in other words, the entire building) cannot constitute 'impaired property'" because the definition of "impaired property" excludes "your work.'" (Dkt. No. 48 at 11-12). "In construing the provisions of an insurance policy, the Court must consider the policy as a whole and adopt a construction that gives effect to the whole instrument and to each of its various parts and provisions." *Newman*, 684 S.E.2d at 545. "Each exclusion in the policy must be read and applied independently of every other exclusion." *Id.* at 546. "[I]f any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions." *Laidlaw Env't Servs. (TOC), Inc. v. Aetna Cas. & Sur. Co. of Illinois*, 524 S.E.2d 847, 852 (S.C. Ct. App. 1999) (internal quotations omitted); *see also id.* ("[A]n exclusion does not provide coverage but limits coverage.") (quoting *LaMarche v. Shelby Mut. Ins. Co.*, 390 So.2d 325, 326 (Fla. 1980)). This Court has held that exclusion m has the effect of barring recovery for "any property that must be restored, repaired, or replaced due to [the insured's] faulty workmanship." *Am. S. Ins. Co. v. Reynolds Custom Tiling, LLC*, No. 2:15-CV-4190-RMG, 2016 WL 10586424, at *1 (D.S.C. Nov. 10, 2016).

The Court rejects Trident's construction of exclusion m, which would render it meaningless. Trident's argument that exclusion m is inapplicable because "impaired property" is defined elsewhere to exclude "your work" is illogical when the plain language of the exclusion contemplates that "impaired property" may have been damaged as a result of "your work." (Dkt. No. 1-1 at 21, § 1.2.m.) (excluding from coverage "[p]roperty damage to 'impaired property' or property that has not been physically injured, arising out of: . . . (1) a defect, deficiency, inadequacy or dangerous condition ***in 'your product' or 'your work'*** . . . .") (emphasis added). Trident's proposed interpretation does not address the effect of the disjunctive "or" in exclusion m, which also bars recovery for "property damage to property that has not been physically injured." (*Id.*). In and of itself, this part of the exclusion bars recovery of Trident's claimed costs given that the defectively constructed stucco is not "physically injured." *See Crossmann*, 717 S.E.2d at 594. Trident may not cause "property damage" (the repairs and replacement of the defective construction and corresponding "get-to" damages) to "property that has not been physically injured" (the defective construction and surrounding areas) and then seek recovery under the Policy in light of this exclusion.

In light of the foregoing analysis, the Court holds that, while Trident may recover for the water intrusion damage that was proximately caused by the defective construction, Trident may not recover for damages it creates in the course of repairing and replacing its own faulty workmanship, including economic and consequential damages stemming from that work.

### D. Trident's Contract Claims

Because HCC's decision to deny coverage comported with the Policy terms, Trident's bad faith and breach of contract claims are moot. *See Laidlaw*, 524 S.E.2d at 851.

13

IV.    **Conclusion**

For the foregoing reasons, the Courts finds in favor of HCC and holds as a matter of law that the amounts for which Defendant seeks reimbursement (1) "do not constitute damages because of 'property damage' as defined under the Policy" and (2) "were not caused by an 'occurrence' as defined under the Policy and South Carolina law." HCC's motion for summary judgment is **GRANTED** and Trident's motion for summary judgment is **DENIED**.

**AND IT IS SO ORDERED.**

<u>s/Richard M. Gergel</u>
Richard Mark Gergel
United States District Judge

June 10, 2024
Charleston, South Carolina